*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1142**

Brett Thomas Green, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 17, 2017
Affirmed
Schellhas, Judge**

Isanti County District Court
File No. 30-CR-08-1174

Brett Thomas Green, Bayport, Minnesota (pro se appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Jeffrey R. Edblad, Isanti Scott County Attorney, Scott A. Hersey, Special Assistant County Attorney, Minnesota County Attorneys Association, St. Paul, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges the district court's summary denial of his postconviction petition, arguing that (1) he is entitled to a default judgment because the court issued its order 118 days after he filed his petition; (2) the court abused its discretion by denying him

an evidentiary hearing and a new trial on his claim of newly discovered alibi evidence; and (3) the court erred by denying his challenge to the Minnesota Department of Corrections' extension of his incarceration. We affirm.

**FACTS**

A jury found appellant Brett Green guilty of first-degree criminal sexual conduct (complainant at least 13 but less than 16 years of age and actor more than 48 months older than complainant and in position of authority over complainant), and the district court sentenced Green to 153 months' imprisonment. *State v. Green*, No. A11-850, 2012 WL 1470164, at *2 (Minn. App. Apr. 30, 2012) (*Green I*). A full recitation of the facts of the criminal-sexual-conduct incident are summarized in that opinion. *See id.* at *1. Green maintained at trial that the victim, A.S., fabricated her claim and that no sexual contact occurred. Green's counsel emphasized alleged inconsistences in A.S.'s testimony. Counsel argued that "[c]hildren can't consent, but what children can do is tell stories" and that A.S. "told a story to her friends to fit in, to look cool, and to impress them. . . . It was gossip"; and argued that "[t]here's no magic bullet to tell who . . . is or isn't telling the truth," but, "if a person is constantly telling you one thing and then the other and then something else, we tend to not believe them. And that's the case here." This court affirmed Green's conviction, rejecting his arguments that the evidence was insufficient to support his conviction and that he was entitled to a new trial because false testimony was admitted at trial. *Id.* at *4–5.

Following his direct appeal, Green unsuccessfully sought habeas relief in federal district court and postconviction relief in state court. *See Green v. State*, No. A15-1386,

2016 WL 1397121 (Minn. App. Apr. 11, 2016) (*Green III*), *review denied* (Minn. June 29, 2016); *Green v. State*, No. A14-0613, 2015 WL 46502 (Minn. App. Jan. 5, 2015) (*Green II*), *review denied* (Minn. Mar. 17, 2015); *Green v. Warden of Rush City MCF*, Civil No. 13-3061 ADM/SER, 2014 WL 2003016 (D. Minn. May 15, 2014).

In January 2016, Green filed another postconviction petition, claiming newly discovered evidence and seeking a new trial based on the alleged recantation of testimony by M.W., a witness. At trial, M.W. had testified that on the night of the incident, he was at home with Green and A.S.; that his mother had left for the night and had left Green in charge; that Green was on the couch, and A.S. was on the couch or the recliner; that M.W. fell asleep and awoke early the next morning; that when M.W. awoke, A.S. was in his bedroom and Green was in his mother's bedroom; and that M.W. did not see anything happen between A.S. and Green.

In an October 23, 2015 affidavit filed with the district court, M.W. averred that A.S. threatened him into testifying against Green, bribing him with a promise of sex if he agreed; that Green "was never put into a position of authority by" his mother; that A.S. made advances toward Green on the night of the incident, which annoyed Green; that he was only asleep for 30 to 45 minutes; and that A.S. did so many drugs on the night of the incident that she did not remember what happened. M.W. also averred that he was recanting his trial testimony because he felt guilty and that he waited five years to do so because he was afraid of getting into trouble.

The district court summarily denied Green's postconviction petition. This appeal follows.

**D E C I S I O N**

In its order denying Green postconviction relief, the district court noted that Green's requests for relief in his postconviction petition are "essentially identical to that requested in his prior postconviction proceedings," also noting that the "only new issues raised are a request to change the expiration date on his Department of Corrections record, to remove an entry from his Department of Corrections discipline record, and to order an evidentiary hearing and new trial in consideration of the submitted affidavit of trial witness [M.W.]."

*Claim of entitlement to default judgment*

Green asserts that the district court erred by not granting him default judgment, arguing that the court was required to grant him default judgment because it did not issue its postconviction order within the "legal limit for review legally set at 90 days." To support his argument, Green cites Minn. Stat. § 590.01−.02 (2014) and *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976). Because nothing in chapter 590 or *Knaffla* mandates that the district court issue an order on a postconviction petition within 90 days, Green's argument fails.

*Denial of evidentiary hearing and new trial*

Green argues that the district court erred by denying him an evidentiary hearing and new trial on his claim of newly discovered alibi evidence, i.e., M.W.'s alleged recantation. He claims that M.W.'s affidavit presents evidence that proves his actual innocence by a preponderance of the evidence because it discredits A.S.'s testimony, establishes that there was no time for the crime to occur, and shows that Green was not put in a position of authority over M.W. and A.S. when the sexual contact occurred. Green also claims that the

4

affidavit proves that he is innocent because the victim, A.S., is not credible because she is a "single witness of dubious veracity testimony" who "made up [her] claims" and that the evidence therefore is insufficient to support his conviction. The district court concluded that, "even if taken as true," nothing contained in M.W.'s affidavit "would probably produce a more favorable result," noting that "a review of [M.W.]'s trial testimony shows it is markedly consistent with his Affidavit regarding the essentials of the events in dispute."

"A postconviction petitioner is entitled to an evidentiary hearing '[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief.'" *Caldwell v. State*, 853 N.W.2d 853, 770 (Minn. 2014) (quoting Minn. Stat. § 590.04, subd. 1 (2012)). "In the context of witness-recantation claims," the allegations in the postconviction petition must have factual support that carries "sufficient indicia of trustworthiness" and "recite facts that would, if proven by a preponderance of the evidence, entitle the petitioner to a new trial." *Id.* (quotation omitted). "[A] petitioner is entitled to an evidentiary hearing if, assuming that the trustworthy allegations contained in the petition, files, and records are true, a court would conclude that a material witness's trial testimony was false and that the false testimony might have affected the verdict." *Id.* at 772. "Courts generally view recanting affidavits and testimony with suspicion." *State v. Ferguson*, 742 N.W.2d 651, 659 (Minn. 2007).

"The postconviction court may summarily deny a petition without holding a hearing if the petition, files, and records conclusively show that the petitioner is not entitled to relief." *Hooper v. State*, ___ N.W.2d ___, ___, 2016 WL 7232358, at *3 (Minn. Dec. 14,

5

2016). "[Appellate courts] review the summary denial of a petition for postconviction relief for an abuse of discretion." *Carridine v. State*, 867 N.W.2d 488, 492 (Minn. 2015). "Legal issues are reviewed de novo, but review of factual matters is limited to determining whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Id.* "When applying this standard, a matter will not be reversed unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Id.* (quotation omitted).

"The decision whether to grant a new trial based upon newly discovered evidence rests with the court and will not be disturbed unless there is an abuse of discretion." *Pederson v. State*, 649 N.W.2d 161, 163 (Minn. 2002). A new trial based upon newly discovered evidence may be granted when a defendant proves:

> (1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result.

*Carridine*, 867 N.W.2d at 496 (quoting *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997)) (quotation marks omitted). "Although the four-prong *Rainer* test is the correct test for newly-discovered evidence, it is not the correct test when a court reviews an allegation that false testimony was given at trial." *Dukes v. State*, 621 N.W.2d 246, 256 (Minn. 2001), *holding modified by Ferguson v. State*, 645 N.W.2d 437, 445 (Minn. 2002).

In this case, the district court applied the four-part *Rainer* test. But when assessing the merits of a claim based on false or recanted testimony, the reviewing court "follow[s] the three-prong test set forth in *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir. 1928)." *Ortega v. State*, 856 N.W.2d 98, 103 (Minn. 2014). A new trial based on false testimony may be granted where (1) the court is reasonably well satisfied the testimony was false; (2) the jury might have reached a different conclusion without the testimony; and (3) the petitioner was surprised by the testimony and was unable to counteract it or did not know it was false until after the trial. *State v. Nicks*, 831 N.W.2d 493, 511 (Minn. 2013). "The first two prongs of the *Larrison* test are compulsory." *Dobbins v. State*, 845 N.W.2d 148, 151 (Minn. 2013). "The third prong is relevant but is not an absolute condition precedent to granting relief." *Id.* (quotation omitted). "When applying the *Larrison* factors to determine whether to grant an evidentiary hearing, the postconviction court must assume the truth of the allegations in the petition." *Ortega*, 856 N.W.2d at 103.

The state argues that the *Larrison* test is the appropriate test but does not specifically allege that the district court erred by applying the *Rainer* test. Green makes no argument that the *Larrison* test is the appropriate test. We agree that the appropriate test is the three-part *Larrison* test instead of the four-part *Rainer* test because Green is claiming that M.W. recanted his false trial testimony. Applying the *Larrison* test, we conclude that Green failed to meet his burden of proving the first part of the *Larrison* test—that M.W.'s trial testimony was false. Green also failed to satisfy the second part of the *Larrison* test because, even if the court accepts that the testimony was false, he cannot prove that the jury might have reached a different conclusion based upon the facts alleged in the affidavit and without the

7

trial testimony. He also failed to satisfy the third part of the *Larrison* test—that he was surprised by M.W.'s testimony and was unable to counteract it or did not know it was false until after the trial.

The district court correctly concluded that M.W.'s trial testimony and affidavit are consistent on the essential points in dispute and that M.W.'s affidavit therefore does not raise a genuine factual dispute about Green's innocence. Green's claims amount to no more than an attack on A.S.'s credibility that this court already has rejected. *See Green I*, 2012 WL 1470164, at *4 (rejecting Green's argument that the evidence was not sufficient to convict him because A.S. gave four different versions of the sexual touching because "[a]ssessing the credibility of a witness is exclusively the function of the jury," and explaining that, "the law imposes no requirement that the testimony of a sexual assault victim be corroborated").

We agree with the district court that, even if true, M.W.'s affidavit evidence is not sufficient to prove by a preponderance of the evidence that Green is innocent. The court did not abuse its discretion by summarily denying Green's postconviction petition for a new trial on his claim of newly discovered alibi evidence.

### Extended-incarceration challenge

Green did not file a habeas petition in district court, did not name the Minnesota Department of Corrections (DOC) as a party to his postconviction proceeding in district court, and the DOC is not a party to this appeal. Yet Green argues that the DOC violated his constitutional due-process rights, his privilege against self-incrimination, and the prohibition against cruel and unusual punishment by extending his incarceration by 30 days

8

for his refusal to participate in chemical-dependency treatment. The DOC extended Green's incarceration by 30 days after an administrative hearing at Minnesota Correctional Facility–Stillwater on February 16, 2016. Green argued that the chemical-dependency assessment was invalid, that he was not appropriate for treatment, and that he had not refused treatment. The district court rejected Green's claims, explaining that a habeas petition is the proper method for claiming that a constitutional right has been violated unless the constitutional violation rises to the level of cruel and unusual punishment in violation of the Eighth Amendment, which was not the case with Green's petition. The state argues that Green's claims about the DOC's disciplinary policies is not properly before this court because postconviction remedies are not available for those claims. We agree.

First, "the authority of a court to review a sentence is separate and distinct from judicial authority to review the decisions of the Commissioner in administering the sentence imposed." *State v. Schnagl*, 859 N.W.2d 297, 302 (Minn. 2015). Second, Minnesota Statutes, chapter 590, "does not provide the district court with a procedural vehicle to address the administrative decisions of the Commissioner." *Id.*; *see Thompson v. State*, 284 Minn. 274, 278, 170 N.W.2d 101, 104 (1969) (explaining that Minnesota Statutes sections 590.01–.06 "were enacted to provide a postconviction remedy by which a defendant may attack the judgment of conviction"); *Rainer*, 566 N.W.2d at 696 (holding that "constitutional claims against the [DOC's] deduction of room and board costs from inmate wages to offset the cost of incarceration are not properly brought as a basis for postconviction relief"). "[T]he Commissioner's decision involves the gathering of facts,

9

and application of those facts to the sentence, to determine whether the offender has satisfied the terms of the sentence imposed by the district court." *Schnagl*, 859 N.W.2d at 302.

Third, postconviction petitions are filed in criminal proceedings "between the State and the defendant in which the DOC is not a party and has no means to intervene." *See id.* at 302−03 (citing *State v. Stith*, 292 N.W.2d 269, 275 (Minn. 1980) (declining to address challenge in direct appeal to calculation of offender's eligibility date for parole "because the [DOC] is not a party to this action")). "In the absence of the Commissioner as a party, a district court's order directing the Commissioner to correct the expiration date of a conditional-release term could very well be a non-binding advisory opinion." *Id.* at 303. "A habeas petition is a civil action in which the Commissioner must be named as a party." *Id.* (citing Minn. Stat. § 589.04(b) (2014)); *State v. Clark*, 270 Minn. 181, 185, 132 N.W.2d 811, 814 (1965) (explaining that in a habeas proceeding "the county attorney is not a proper respondent with custody")).

"Consequently, we conclude that a [postconviction petition under chapter 590] is not the proper procedure to obtain judicial review of the Commissioner's administrative decision." *Schnagl*, 859 N.W.2d at 303. Judicial review of the DOC's administrative decision implementing an extension of incarceration as a disciplinary measure "may be obtained by a petition for a writ of habeas corpus in which the Commissioner is a named party." *Id.* We therefore decline to reach the merits of Green's claim regarding his extended incarceration. Even if we were to reach the merits of Green's challenge, no record evidence suggests that the district court erred in concluding that the DOC acted within its statutory

authority by extending Green's incarceration by 30 days as a result of his failure to participate in chemical-dependency treatment.

**Affirmed.**