# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-2179

_____

Troy K. Scheffler

*Plaintiff - Appellant*

v.

Richard A. Trachy; Ivy S. Bernhardson; Francis J. Connolly; Lucinda E. Jesson;
James B. Florey

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 11, 2020
Filed: July 20, 2020
[Unpublished]

_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Troy K. Scheffler appeals from the district court's[1] dismissal with prejudice of his lawsuit against five state-court judicial officers on the basis of absolute judicial immunity. We affirm.

## I. *Background*[2]

On October 12, 2010, the City of New Hope ("City"), Minnesota police department charged Scheffler with speeding. On April 7, 2011, the City, through prosecuting attorney Steven Sondrall, agreed "to dismiss the speeding charge." R. & R. at 2, *Scheffler v. Trachy*, No. 0:18-cv-01690-SRN-LIB (D. Minn. Feb. 15, 2019), ECF No. 94 (internal quotation omitted). "The agreement provided that the speeding charge would be dismissed if [Scheffler] paid $145.00 in prosecution costs and did not receive any new traffic violations in the next year." *Id.* (internal quotation omitted). It additionally stated "that if the agreement is terminated and the prosecution resumes and a trial is held that [Scheffler] would then stipulate that on October 12, 2010[,] in the City of New Hope [Scheffler] was travelling northbound on Highway 169 at a [speed] of 67 mph" in violation of the posted speed limit of 55 mph. *Id.* (internal quotation omitted). On April 14, 2011, the Minnesota state court accepted the agreement. The Minnesota state court subsequently dismissed the speeding charge on October 9, 2012.

On March 8, 2016, Scheffler filed a petition for expungement in Minnesota state court. *See* Minn. Stat. § 609A.02, subdiv. 3(a)(1). Scheffler received a "[n]otice of [n]o hearing," which stated "that a hearing would only be held if the court was considering denying the petition." R. & R. at 2.

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

[2]"In reviewing the grant of a motion to dismiss, we recite the facts as alleged in [Scheffler's] complaint and assume them to be true." *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1031 n.2 (8th Cir. 2019).

On July 6, 2016, Minnesota Judicial Referee Richard A. Trachy denied Scheffler's petition without a hearing. Chief Judge Ivy S. Bernhardson of the Minnesota State District Court for the Fourth Judicial District co-signed Referee Trachy's decision. Scheffler alleges that Referee Trachy omitted from his decision material portions of the expungement statute. In addition, Scheffler alleges that Referee Trachy crafted arguments on behalf of the City, which did not contest the expungement petition. Scheffler appealed the denial of his petition. "[T]he Minnesota Court of Appeals reversed and remanded the decision based on the fact that [Referee] Trachy and [Chief Judge] Bernhardson denied Scheffler his right to a hearing." R. & R. at 3 (internal quotations omitted).

On April 7, 2017, Referee Trachy again denied Scheffler's petition in an order co-signed by Chief Judge Bernhardson. According to Scheffler, the order once again misstated the expungement statute and advocated for the City despite its failure to contest the petition. In the order, Scheffler alleges, Referee Trachy and Chief Judge Bernhardson "made a finding of guilt by stating, 'It is important to note that in this present case, there is no question at all of Petitioner's factual guilt.'" *Id.* (underline and citation omitted). Scheffler again appealed the denial of his petition. Minnesota Court of Appeals Judges James B. Florey, Francis J. Connolly, and Lucinda E. Jesson affirmed the denial of Scheffler's petition. Scheffler filed a petition for discretionary review to the Minnesota Supreme Court, which denied it.

On March 23, 2018, Scheffler filed a second petition for expungement. On May 24, 2018, Scheffler received a "notice of no hearing." *Id.* at 4. The notice stated that a hearing would only be held if the court intended to deny the second petition. On June 4, 2018, Referee Trachy and Chief Judge Bernhardson issued an order indicating their intent to deny the second petition. Scheffler moved to disqualify Referee Trachy due to alleged bias, but Referee Trachy denied the request.

Scheffler also moved for relief from final judgment from Referee Trachy's order denying the original petition under Minnesota Rule of Civil Procedure 60.02.

On July 9, 2018, Referee Trachy and Chief Judge Bernhardson denied Scheffler's Rule 60.02 motion without a hearing. In that same order, Referee Trachy recused himself from further proceedings. Scheffler appealed the denial of the Rule 60.02 motion to the Minnesota Court of Appeals, which dismissed the appeal.

On August 30, 2018, Scheffler filed his first amended complaint[3] in the present action against Referee Trachy, Chief Judge Bernhardson, Judge Connolly, Judge Jesson, and Judge Florey (collectively, "judicial defendants").[4] On the basis of the above allegations, he alleged 17 causes of action.[5] As relief, Scheffler sought monetary

[3]Scheffler filed his original complaint on June 19, 2018.

[4]Scheffler also filed suit against the City, but the parties subsequently stipulated to the dismissal of the City with prejudice, and the district court entered an order in accordance with the stipulation.

[5]Pursuant to the Minnesota Constitution, Scheffler alleged claims for Denial of Equal Protection (Count 1), Denial of Right to Confront Hostile Witness in Criminal Proceeding (Count 2), Denial of Procedural Due Process Right as Applied to Plaintiff to Notice and Meaningful Hearing Opportunity and Double Jeopardy (Count 3), and Denial of Right to Due Process (Count 4). Pursuant to the United States Constitution, Scheffler alleged claims for Denial of Right to Access to Court to Petition for Redress of Grievances (Count 5), Denial of Due Process as Applied to Plaintiff (Count 6), Denial of Right to Confront Hostile Witness in Criminal Proceeding (Count 7), Denial of Procedural Due Process as Applied to Plaintiff to Have Meaningful Hearing on Expungement and Motion to Amend an Order under Rule 60.02 (Count 8), Denial of Equal Protection of Laws (Count 9), and Denial of Right to Due Process (Count 17). Counts 1 through 9 and Count 17 were not directed at any specific defendant, but those counts appear to refer only to the judicial defendants.

Scheffler also alleged claims for Breach of Contract (Count 10), Tortious Interference with a Contract (Count 11), Promissory Estoppel (Count 12), Fraud in the

damages; declaratory relief; "[i]njunctive relief to enjoin (a) denial of Rule 60.02 and partiality hearings, and (b) to enjoin any uniform rule, or rule as applied to [Scheffler], prohibiting oral argument by [Scheffler] because of his *pro se* status"; and other unspecified mandamus relief. Am. Compl. at 49–50, *Scheffler v. Trachy*, No. 0:18-cv-01690-SRN-LIB (D. Minn. Aug. 30, 2018), ECF No. 41. The judicial defendants moved to dismiss the complaint.

On February 13, 2019, the federal magistrate judge in the present action received an unsolicited e-mail from Scheffler stating that on January 2, 2019, the Minnesota state court granted Scheffler's second petition for expungement. In that e-mail, Scheffler conceded that "much of the obviously relevant mandamus and declaratory relief demanded is also moot due to the expungement being granted." R. & R. at 7. However, Scheffler argued that "the expungement doesn't moot the [judicial] defendants['] finding that [Scheffler] was guilty of a dismissed charge." *Id.*

The magistrate judge recommended that the district court grant the judicial defendants' motion to dismiss "on the basis of absolute judicial immunity or application of the *Rooker-Feldman*[6] doctrine." *Id.* at 13. The district court ultimately dismissed the action. Like the magistrate judge, it concluded that absolute judicial immunity applied. Alternatively, it concluded that the *Rooker-Feldman* doctrine applied to Scheffler's claims arising from the first expungement petition, but

---

Inducement (Count 13), Negligent Misrepresentation (Count 14), Unjust Enrichment (Count 15), and Negligence (Count 16). Counts 10 through 16 were asserted against only the City.

[6]*D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923).

*Younger*[7] abstention applied to Scheffler's claims arising from the second expungement petition.

## II. *Discussion*

On appeal, Scheffler argues that the district court erred in dismissing his action against the judicial defendants. He contends that absolute judicial immunity is unavailable to the judicial defendants. Alternatively, he argues that neither the *Rooker-Feldman* doctrine nor *Younger* abstention applies.

We review de novo a district court's grant of a motion to dismiss. *Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 759 (8th Cir. 2019).

> Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. It is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. A judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction*.

*Id.* at 759–60 (emphasis added) (cleaned up).

Here, Scheffler argues that "without the statutory predicate of written opposition to his petition, Referee Trachy, countersigned by Judge Bernhardson, denied his petition [for expungement of a traffic violation]. They transgressed Minn. Const. Art. VI and Minn. Stat. § 484.71, without subject matter jurisdiction, to act as

---

[7]*Younger v. Harris*, 401 U.S. 37 (1971).

self-appointed executive branch prosecutors." Appellant's Br. at i. According to Scheffler, the judicial defendants "ha[d] no subject matter jurisdiction to rewrite [the expungement statute] by striking the word 'crime'. . . and inserting the word 'charge.'" *Id.* at 17. He argues that the judicial defendants "disregarded the due, constitutional bounds of their jurisdiction by finding him 'factually guilty' in spite of the [Minnesota] Legislature's mandatory command ('shall') to grant his expungement." *Id.* at 21. Thus, Scheffler is arguing only that the judicial defendants acted in the complete absence of all jurisdiction, not that they acted outside of their judicial capacity.

> Because some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.

*Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (cleaned up).

"An action—taken in the very aid of the judge's jurisdiction over a matter before him—cannot be said to have been taken in the absence of jurisdiction." *Justice Network Inc.*, 931 F.3d at 762 (cleaned up). Furthermore, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359. A court's exercise of its jurisdiction in an erroneous manner does "not make the act any less a judicial act; nor [does] it render the [judicial] defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever." *Id.* (internal quotation omitted).

For example, in *Stump*, the Supreme Court held that a state circuit judge did not act in the clear absence of all jurisdiction in granting a mother's petition to have her

teenage daughter sterilized and, therefore, was entitled to absolute judicial immunity. *Id.* at 357–58. The Court found "significant that there was no [state] statute and no case law . . . prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented to [the state circuit judge]." *Id.* at 358. Therefore, the state circuit judge was entitled to absolute judicial immunity from the daughter's civil rights action. *Id.* at 359–60.

Similar to the circuit court in *Stump*, Minnesota state courts are courts of general jurisdiction. *See* Minn. Stat. § 484.01, subdiv. 1; *State v. Schnagl*, 859 N.W.2d 297, 301 (Minn. 2015) ("Minnesota's district courts are courts of general jurisdiction that, with limited exceptions . . . have the power to hear all types of civil and criminal cases."). As courts of general jurisdiction, the judicial defendants had the authority to rule on the expungement petition. Just as in *Stump*, even if the judicial defendants' rejection "of the petition may in retrospect appear to have been premised on an erroneous view of the law, [the judicial defendants] surely had jurisdiction to consider the petition and to act thereon." *Stump*, 435 U.S. at 354–55 (internal quotation omitted).

The judicial defendants, therefore, are entitled to absolute judicial immunity on Scheffler's monetary claims.[8] But "[o]ur conclusion that [the judicial defendants] are entitled to judicial immunity does not resolve whether [Scheffler] may seek injunctive and declaratory relief." *Judicial Network Inc.*, 931 F.3d at 762. As a threshold matter, Scheffler apparently conceded in his e-mail to the magistrate judge that his request for declaratory relief is moot given that his second petition for expungement was granted.

---

[8]Our conclusion equally applies to Referee Trachy because absolute judicial immunity extends to judicial referees. *See Jackson v. Marek*, No. 18-cv-1432 (JRT/KMM), 2018 WL 3321577, at *2 (D. Minn. June 18, 2018) (citing *Cassell v. Cty. of Ramsey*, No. 15-cv-2598 (PJS/JJK), 2015 WL 9590802, at *4 (D. Minn. Dec. 11, 2015)), *report and recommendation adopted*, 2018 WL 3321439 (D. Minn. July 5, 2018).

But even assuming his requests for declaratory and injunctive relief remain viable, we conclude that these requests are barred. *See id.* at 763–64.

"[J]udicial immunity typically bars claims for prospective injunctive relief against judicial officials acting in their judicial capacity. Only when a declaratory decree is violated or declaratory relief is unavailable would plaintiffs have an end-run around judicial immunity." *Id.* at 763 (internal quotation omitted). Here, Scheffler "has not alleged that declaratory relief was unavailable or that a declaratory decree was violated." *Id.* Therefore, judicial immunity bars Scheffler's request for injunctive relief against the judicial defendants. Furthermore, "declaratory relief is limited to *prospective* declaratory relief." *Id.* at 764. Here, Scheffler sought declaratory relief that his rights "were violated." *See, e.g.*, Am. Compl. at 31 ("That [Scheffler] seeks declaratory relief that his due process rights within this claim were violated."). Scheffler's "request for declaratory relief is purely retrospective." *Judicial Network Inc.*, 931 F.3d at 764.

Therefore, we hold that the district court did not err in dismissing Scheffler's amended complaint against the judicial defendants on the basis of absolute judicial immunity.[9]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

---

[9]Because we affirm the district court's dismissal of Scheffler's amended complaint on the basis of absolute immunity, we need not address the applicability of the *Rooker-Feldman* doctrine or *Younger* abstention.