STATE OF MINNESOTA

IN SUPREME COURT

A24-1702

Carver County
Moore, III, J.

Adrian Dominic Riley,

Appellant,

vs.

State of Minnesota,
Filed: October 22, 2025
Office of Appellate Courts

Respondent.

_____

Adrian Dominic Riley a/k/a Amiri Abdul Rasheed-El, Moose Lake, Minnesota, pro se.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mark A. Metz, Carver County Attorney, Peter A. C. Ivy, Chief Deputy County Attorney, Chaska, Minnesota, for respondent.

_____

S Y L L A B U S

1.     The district court erred in concluding it lacked jurisdiction to hear appellant's motion to correct a sentence under Minnesota Rule of Criminal Procedure 27.03, subdivision 9, which only challenged the lawfulness of his mandatory life sentences, because under *Reynolds v. State,* 888 N.W.2d 125 (Minn. 2016), such a motion is not subject to the limitations period imposed by Minnesota Statutes § 590.01, subdivision 4, and even if it were, under *Carlton v. State*, 816 N.W.2d 590 (Minn. 2012), the limitations period imposed by Minnesota Statutes § 590.01, subdivision 4 is not jurisdictional.

1

2.	Although the district court erred when it concluded that it lacked jurisdiction, it reached the correct outcome in this case because appellant was sentenced to statutorily mandated life sentences for first-degree murder, and therefore the absence of a presentence investigation, as well as the alleged miscalculation and improper weighing of his criminal history score, did not render his sentences unlawful within the meaning of Minnesota Rule of Criminal Procedure 27.03, subdivision 9 because the presentence investigation statute and the Minnesota Sentencing Guidelines do not govern mandatory life imprisonment sentences for first-degree murder.

Affirmed.

O P I N I O N

MOORE, III, Justice.

Appellant Adrian Dominic Riley was convicted of three counts of first-degree murder and three counts of second-degree murder in 1995 and was sentenced to three consecutive life sentences. After we affirmed Riley's convictions on direct appeal in 1997, he filed several postconviction petitions under Minnesota Statutes § 590.01 (2024), which were denied. In July 2024, Riley filed his fifth request for postconviction relief—a motion to correct or reduce his sentence under Minnesota Rule of Criminal Procedure 27.03, subdivision 9. In his motion, Riley argued that his sentence is unlawful because he did not receive a presentence investigation (PSI), which would have revealed that he has dyslexia and a history of childhood physical abuse, and because the district court miscalculated and

2

improperly weighed his criminal history score.[1]  Riley argues that the information about his dyslexia and past abuse, had it been reported to the district court before sentencing, may have resulted in his receiving concurrent sentences rather than consecutive sentences.

The State asserted that Riley's motion was really a petition for postconviction relief under Minn. Stat. § 590.01.  Based on that assertion, the State argued Riley's claims were time-barred under Minn. Stat. § 590.01, subd. 4, and then erroneously cited *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976), for the proposition that the statutory time bar is jurisdictional.  The district court agreed with the State and denied Riley's motion for relief. The one-page order failed to explain the district court's reasoning.

We conclude that the district court erred in treating Riley's petition as a petition for postconviction relief under Minn. Stat. § 590.01 rather than as a motion to correct a sentence under Minn. R. Crim. P. 27.03.  But after properly construing Riley's petition under Minn. R. Crim. P. 27.03, we nonetheless affirm the district court's dismissal order because, despite Riley's assertion to the contrary, his sentences were not unlawful.

**FACTS**

On April 25, 1996, a Carver County jury found Adrian Dominic Riley guilty of three counts of first-degree murder and three counts of second-degree murder for the shooting

---

[1]     Riley also claimed that his sentence is unlawful because the district court did not award 351 days of jail credit for time served in the county jail before sentencing.  But that claim is moot because the district court has now granted his jail credit request and the State does not challenge the award of jail credit.

deaths of three people in Watertown Township on May 23, 1995.[2] On April 29, 1996, a state probation agent submitted a letter to the district court explaining that a presentence investigation (PSI) would not affect Riley's sentence because Minn. Stat. § 609.185 (1994) mandated a life sentence for a first-degree murder conviction.[3] The probation agent noted that a post-sentence investigation would be completed at the department of corrections under Minn. Stat. § 609.115 (1994). *Id.* On May 10, 1996, the district court sentenced Riley to three consecutive life sentences.

Riley has challenged his convictions multiple times. We have affirmed Riley's convictions on direct appeal and on review from the denial of multiple postconviction petitions.[4] *State v. Riley*, 568 N.W.2d 518 (Minn. 1997); *Riley v. State*, 792 N.W.2d 831, 832 (Minn. 2011); *Riley v. State*, 819 N.W.2d 162 (Minn. 2012). But none of Riley's prior appeals have challenged his sentences.

On July 25, 2024, Riley filed the present motion to correct and reduce his sentences under Minn. R. Crim. P. 27.03, subd. 9. Relevant to this appeal, Riley argued that his

---

[2] The events of the murders are described in *State v. Riley*, 568 N.W.2d 518 (Minn. 1997).

[3] The relevant statutory language has not changed since Riley's conviction. *See* Minn. Stat. § 609.185(a) (2024) ("Whoever does any of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life . . . .").

[4] These prior cases are described in *Riley v. State*, 819 N.W.2d 162, 165-66 (Minn. 2012). On June 8, 2017, Riley filed a fourth petition for postconviction relief. The district court denied Riley's petition on August 2, 2017. Riley did not appeal the district court's order.

sentences are unlawful because the district court did not conduct a presentence investigation before his sentencing. Riley claimed that a presentence investigation would have revealed that he was diagnosed with dyslexia and that he had a history of childhood physical abuse. Riley further claimed that this resulted in the sentencing judge applying the wrong criminal history score, which in turn resulted in his consecutive rather than concurrent life sentences. Riley also raised Minn. Stat. § 609.133, which allows prosecutors to seek sentence adjustments, as an avenue for relief from his consecutive sentences.

In its response, the State argued that the district court lacked subject matter jurisdiction to hear Riley's petition. The State cited Minn. Stat. § 590.01, subd. 2 (providing that the postconviction remedy takes the place of any other common law, statutory or other remedies), for the proposition that a chapter 590 postconviction petition is the sole remedy to challenge a sentence. *Contra* Minn. R. Crim. P. 27.03, subd. 9 (allowing a court to correct an unlawful sentence at any time). Having construed Riley's motion to correct his sentence as a postconviction petition, the State argued that Riley's claims were time-barred under Minn. Stat. § 590.01, subd. 4,[5] and then cited *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976), for the proposition that the statutory time bar is jurisdictional.

---

[5]     A petition for postconviction relief may not be filed more than two years after "the entry of judgment of conviction or sentence if no direct appeal is filed" or "an appellate court's disposition of petitioner's direct appeal," unless a statutory exception applies. Minn. Stat. § 590.01, subd. 4.

On October 7, 2024, the district court held a hearing on Riley's motion at which Riley appeared via Zoom. Later that day, the court issued a one-page order in response to Riley's motion. The order stated in full:

1. The Carver County District Court lacks jurisdiction to hear Defendant's claims.
2. Defendant's motion for relief is **DENIED** in full.
3. Defendant's sentence shall be amended to include credit for 351 days served prior to adjudication.
4. All orders unaffected by this order remain in full force and effect.

The district court failed to explain why it lacked jurisdiction or provide any reasoning behind its order. Riley then appealed to this court.

**ANALYSIS**

We first discuss the district court's decision to treat Riley's motion to correct a sentence under Minnesota Rule of Criminal Procedure 27.03, subdivision 9, as a petition for postconviction relief under Minnesota Statutes § 590.01. We then turn to the merits of Riley's motion.

I.

The distinction between a motion to correct a sentence and a petition for postconviction relief is based upon the relief sought. Minnesota Rule of Criminal Procedure 27.03, subdivision 9, provides that "[t]he court may at any time correct a sentence not authorized by law." By contrast, Minn. Stat. § 590.01 provides a limited window of time in which a petitioner can seek broader forms of postconviction relief. Minn. Stat. § 590.01, subd. 1 (allowing persons convicted of a crime to file a petition "to

6

vacate and set aside the judgment and to discharge the petitioner or to resentence the petitioner or grant a new trial or correct the sentence or make other disposition as may be appropriate"); *id.*, subd. 4 (providing a two-year time limit to file a petition for postconviction relief, subject to certain exceptions).

In prior cases, we have declined to adopt a definitive standard of review that applies to a district court's decision to construe a request for relief styled as a motion to correct a sentence under Minn. R. Crim. P. 27.03, subd. 9, as a petition for postconviction relief. *See Wayne v. State*, 870 N.W.2d 389, 391 n.2 (Minn. 2015); *Johnson v. State*, 877 N.W.2d 776, 779 n.3 (Minn. 2016); *Bolstad v. State*, 966 N.W.2d 239, 243 (Minn. 2021). We have not needed to determine the standard of review because we concluded that the outcome in those cases would be the same under either de novo or abuse of discretion review. *See id.* Because here too, we conclude that the outcome would be the same under either standard of review, we again decline to reach the issue.

Identifying the nature of Riley's request for postconviction relief is significant because a motion to correct a sentence can be brought at any time, while a petition for postconviction relief is subject to a two-year statute of limitations in the absence of a statutory exception. *See State v. Maurstad*, 733 N.W.2d 141, 147 (Minn. 2007) (explaining that under Minn. R. Crim. P. 27.03, subd. 9, illegal sentences are correctable at any time); *compare* Minn. R. Crim. P. 27.03, subd. 9, *with* Minn. Stat. § 590.01, subd. 4.

In considering whether a motion under Rule 27.03, subd. 9, should be treated as a petition for postconviction relief, the way that a petitioner characterizes their motion is not

7

dispositive. Instead, we "look to the pleadings and the relief sought in order to determine the nature of a claim." *State v. Coles*, 862 N.W.2d 477, 480 (Minn. 2015). When the relief sought implicates more than a petitioner's sentence, we have held that a motion should be construed as a petition for postconviction relief rather than a motion to correct a sentence. *Id.* at 481–82 (concluding that the appellant's request for relief fell outside the scope of Rule 27.03 because the challenge to his sentence would implicate the plea agreement that gave rise to the sentence).

In its memorandum to the district court, the State did not argue that the relief Riley seeks fell outside the scope of Rule 27.03. Instead, the State argued that the postconviction relief statute, Minn. Stat. § 590.01, provides the exclusive remedy available to Riley. The State cited Minn. Stat. § 590.01, subd. 2, which states that:

> This remedy takes the place of any other common law, statutory or other remedies which may have been available for challenging the validity of a conviction, sentence, or other disposition and must be used exclusively in place of them unless it is inadequate or ineffective to test the legality of the conviction, sentence or other disposition.

To the extent that the State and the district court read this language to require that any motion to correct a sentence must meet the two-year statute of limitations imposed by Minn. Stat. § 590.01, subd. 4, that is incorrect. We explicitly rejected that interpretation in *Reynolds*, holding that "[t]o the extent that the limitations period in Minn. Stat. § 590.01, subd. 4, interferes with the process laid out in [Minn. R. Crim. P. 27.03, subd. 9], the statute violates the separation of powers." *Reynolds v. State,* 888 N.W.2d 125, 133 (Minn. 2016).

8

Here, Riley's request for postconviction relief challenged his sentence only. It did not challenge his conviction, and his arguments about his sentence did not implicate any issues beyond the scope of Rule 27.03, subd. 9. We therefore conclude that Riley's request for relief fell within the scope of a motion to correct a sentence under Minn. R. Crim. P. 27.03, subd. 9, and thus the district court erred when it construed the request as a postconviction petition under Minn. Stat. § 590.01.

In denying Riley's motion, the district court simply stated that it lacked jurisdiction without any further explanation. We are troubled by the district court's failure to explain how it reached its conclusions because providing such an explanation is important not only to reviewing courts, but to the interested parties. To the extent that the district court's statement that it "lacked jurisdiction" to hear Riley's request for relief was based on a determination that Riley's claims were time-barred under Minn. Stat. § 590.01, subd. 4, that statement conflicts with our case law, including *Reynolds*, 888 N.W.2d at 133, and *Carlton*, 816 N.W.2d at 603.[6] Riley's claims were therefore properly brought under Minn. R. Crim. P. 27.03, subd. 9, which allows courts to correct unlawful sentences "at any time," and the district court had jurisdiction to hear them.

---

[6] That the district court concluded that it lacked jurisdiction suggests that the district court agreed with the State's argument that Riley's claims were time-barred, and that the time bar statute is jurisdictional. But even if Riley's arguments were time-barred under Minn. Stat. § 590.01, subd. 4, the district court would not *lack jurisdiction* to hear the claim. *See Carlton*, 816 N.W.2d at 603 (explaining that the time bar is not jurisdictional).

9

II.

Properly construing Riley's claims as brought under Minn. R. Crim. P. 27.03, subd. 9, we now turn to the merits of Riley's motion. The district court failed to reach the merits, and such a failure would ordinarily require remand to the district court, so that the district court can provide its reasoning. *See, e.g.*, *Waiters v. State*, 14 N.W.3d 279, 282-83 (Minn. 2024) (describing when remand is necessary). But we will sometimes address issues on appeal rather than remanding when judicial economy would be served. *See Bode v. Minn. Dep't of Nat. Res.*, 612 N.W.2d 862, 869 (Minn. 2000) ("It would be an exercise in judicial inefficiency for us to remand this case to the district court . . . ."); *State v. Faber*, 343 N.W.2d 659, 660 (Minn. 1984) ("[I]n the interest of judicial economy, we will put substance over form in this case, and . . . will allow the appeal rather than remand . . . ."). Because Riley's claims are readily determinable on the record, we conclude that judicial economy would be best served by addressing the merits on the current appeal, rather than remanding to district court.[7]

---

[7] In *Waiters v. State*, we reversed the district court's summary denial of postconviction relief and remanded for further proceedings because the record did not disclose the basis for the district court's decision. 14 N.W.3d 279, 282-83 (Minn. 2024); *see Scruggs v. State*, 484 N.W.2d 24 (Minn. 1992) ("In an instance where the reviewing court cannot ascertain whether the postconviction court actually considered one of the petitioner's claims, remand is appropriate."). In *Waiters*, we also acknowledged that where "the record is clear and yields an obvious answer to the relevant questions raised on appeal," remand is not necessary. *Id.* at 283 (quoting *Scruggs*, 484 N.W.2d at 25). The same is true here. *Id.* The sole issue before us, whether Riley's sentence is "contrary to law or applicable statutes," is readily determinable based on the record. *State v. Schnagl*, 859 N.W.2d 297, 301 (Minn. 2015); *see also Bolstad v. State*, 966 N.W.2d 239, 243 (Minn. 2021) (noting that our standard of review in this context is "arguably de

Under Minnesota Rule of Criminal Procedure 27.03, "[t]he court may at any time correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 9. For a sentence to be unauthorized, it must be "contrary to law or applicable statutes." *State v. Schnagl*, 859 N.W.2d 297, 301 (Minn. 2015). The sentence must also have been illegal "at the time it was imposed." *State v. Meger*, 901 N.W.2d 418, 425 (Minn. 2017) (quoting *Reynolds*, 888 N.W.2d at 133). "The defendant bears the burden of proving the facts necessary to show that a sentence was unauthorized." *Hannon v. State,* 957 N.W.2d 425, 432 (Minn. 2021).

On appeal, Riley articulates three reasons that his three consecutive life sentences are not authorized by law. First, Riley argues that the State failed to conduct a PSI, and second, Riley argues that the district court miscalculated and improperly weighed his criminal history score. Riley suggests that both issues resulted in his receiving consecutive mandatory life sentences rather than concurrent mandatory life sentences. Finally, Riley suggests that he should receive relief under the prosecutor-initiated sentence adjustment law, Minn. Stat. § 609.133. We discuss each issue in turn.

Riley argues that the sentencing court's decision not to conduct a PSI violated Minn. Stat. § 609.115 and, thus, his sentence was not authorized by law. To succeed on this

---

novo"). Additionally, resolution of Riley's claim does not implicate the notice and forfeiture issues that we noted in *Waiters*. *Cf. Waiters*, 14 N.W.3d at 284 n.5. That said, we reiterate the need for district courts in future cases to explain their reasoning when they deny postconviction relief or a motion to correct a sentence. Doing so is important not only to reviewing courts, but to the interested parties.

claim, Riley bears the burden of establishing that it was illegal to impose his sentence without a PSI in 1996. *See Hannon*, 957 N.W.2d at 432 ("The defendant bears the burden of proving the facts necessary to show that a sentence was unauthorized.").

As the probation agent's letter points out, a PSI would not have affected Riley's sentence because his first-degree murder convictions required mandatory life sentences under Minn. Stat. § 609.185. But even if a PSI could have influenced Riley's sentence, his sentence is not unlawful because the law does not require courts to conduct a PSI. In *State v. Walker*, we commented on the PSI requirement in Minn. Stat. § 609.115, explaining that "no defendant has an absolute right to demand [a PSI]." 235 N.W.2d 810, 815 (Minn. 1975). As a result, Riley has no right to have his sentence corrected under Minn. R. Crim. P. 27.03, subd. 9.

Riley also claims that the district court based its decision to impose consecutive rather than concurrent sentences on incorrect information. Riley states that the district court weighed his criminal history score incorrectly, which led the court to sentence him to consecutive rather than concurrent life sentences. It is unclear what Riley means by this, as the record does not show that the district court used a criminal history score at all.[8] Riley also argues that "my case worker told me that the state used a P.S.I. from 1990." It is unclear if these two arguments are related. But regardless, mandatory life sentences were

---

[8]    A criminal history score is a numerical value assigned to an offender under the Minnesota Sentencing Guidelines based on the sum of points from eligible prior felonies, custody status at the time of the offense, prior misdemeanors and gross misdemeanors, and prior juvenile adjudications. *See* Minn. Sent. Guidelines 2.B (2025).

not subject to the sentencing guidelines at the time of Riley's sentencing in 1996. *See* Minn. Sent. Guidelines II, subd. E (1995) ("First degree murder . . . ha[s] a mandatory life sentence [and is] excluded from the offenses covered by the sentencing guidelines."). This remains the case today. *See* Minn. Sent. Guidelines 2.E(4) (2024) ("Mandatory life imprisonment sentences for first-degree murder . . . are not governed by the Guidelines."). Thus, a person with a criminal history score of zero and a person with a criminal history score of six would both receive mandatory life sentences for first-degree premeditated murder, whether in 1996 or today. *See* Minn. Sent. Guidelines IV (1995); *Sanders v. State*, 23 N.W.3d 86, 94 (Minn. 2025) (explaining that a criminal history score is irrelevant when a defendant receives a mandatory life sentence or sentences).

Although the record does not contain a PSI, it does contain a sentencing memorandum from the State arguing for the imposition of consecutive sentences. The State makes no mention of Riley's criminal history. Rather, it relies on our case law affirming consecutive sentences for multiple murders. We have held that "when crimes are committed against different persons in the same incident, the district court has discretion to impose one sentence per victim so long as such sentencing does not exaggerate the criminality of the defendant's conduct." *State v. Cole*, 542 N.W.2d 43, 53 (Minn. 1996); *see also State v. Brom*, 463 N.W.2d 758, 765 (Minn. 1990) (holding that the decision to impose three consecutive life sentences for first degree murder was within the discretion of the district court under Minn. Stat. § 609.15 and subject to appellate review only to ensure consecutive sentences were "commensurate with culpability and not an

13

exaggeration of defendant's criminality" (quoting *State v. Bangert*, 282 N.W.2d 540, 547 (Minn. 1979))); *State v. Warren*, 592 N.W.2d 440, 452 (Minn. 1999) (reversing the imposition of *concurrent* life sentences on the grounds that it understated the criminality of a defendant who fatally shot three persons).

Because Riley was convicted of murdering three people, he has not met his burden to establish that his three consecutive life sentences are contrary to the law. *See Sanders*, 23 N.W.3d at 93 ("We have repeatedly affirmed the imposition of multiple consecutive sentences in cases involving violent crimes against multiple victims."); *Hannon,* 957 N.W.2d at 432 (Minn. 2021) ("The defendant bears the burden of proving the facts necessary to show that a sentence was unauthorized."). Riley thus has no right to have his sentence corrected under Minn. R. Crim. P. 27.03, subd. 9.

Finally, we address Riley's argument that under Minn. Stat. § 609.133, the court can, if it so chooses, order his sentences to run concurrently. Minnesota Statutes section 609.133 does not apply to this case. That statute allows *prosecutors*, not courts, to "commence a proceeding to adjust the sentence" of an individual. Minn. Stat. § 609.133, subd. 2 (2024). Here, the State has not initiated a proceeding to adjust Riley's sentence, so Minn. Stat. § 609.133 provides no relief.

14

Accordingly, we hold that although the district court erred when it concluded it lacked jurisdiction, it reached the correct outcome when it concluded that Riley's motion to correct his sentences should be denied in full because Riley's sentences were not unlawful.[9]

## CONCLUSION

For the forgoing reasons, we affirm the decision of the district court on other grounds.

Affirmed.

---

[9] After our nonoral conference and shortly before we issued this opinion, Riley filed a document captioned "Affidavit of Fact and Notice and Motion for an Ex Parte Hearing," citing Minn. R. Civ. P. 41.02 (providing, in part, that the court may "dismiss an action or claim for failure to prosecute or to comply with these rules or any order of the court"). The Minnesota Rules of Civil Procedure "govern the procedure in the *district courts* of the State of Minnesota in all suits of a *civil nature*." Minn. R. Civ. P. 1 (emphasis added). Because this case involves a proceeding in the supreme court that involves a criminal case, Riley's reliance on Minnesota Rule of Civil Procedure 41.02 is misplaced. Accordingly, we deny his motion.

15